CALABRIA, Judge.
 

 *876
 
 Annette Wise ("Wise"), intervenor, appeals from an amended custody order that recognized intervenor as a party, but dismissed intervenor's motions for custody and visitation without prejudice. The trial court concluded that the initial custody order awarding Dawn Weideman ("Weideman"), plaintiff, the biological maternal grandmother, custody of
 
 *877
 
 Chris
 
 [1]
 
 remained in full force and effect. Erin Atalie Shelton ("Shelton"), defendant, is Weideman's biological daughter and Chris's biological mother. We affirm.
 
 *415
 

 I. Background
 

 Weideman and Wise were domestic partners beginning in 1991 when Shelton was approximately two years old. Wise, Weideman, and Shelton resided together in Wise's house as a family unit. When Shelton was around ages thirteen or fourteen, she exhibited outbursts of anger and frustration, or symptoms of a mental health disorder, and was treated with various medications. Around the age of fourteen, Shelton began drinking alcohol and using drugs. At age seventeen, Shelton became pregnant while still using alcohol and drugs, was uncertain as to the father's identity, and dropped out of high school.
 

 In December 2006, Shelton gave birth to Chris. Wise and Weideman were excited to assist Shelton in her role as a new mother. For the first few weeks, Shelton actively cared for Chris by feeding and nurturing him, and Wise and Weideman assisted with routine care of Chris. A few weeks later, Shelton began to suffer from the emotional swings of her untreated mental health disorder and exhibited symptoms suggestive of postpartum depression. Subsequently, Shelton told Weideman that she needed help caring for Chris because she was depressed and struggling. Following this discussion, Weideman and Wise, rather than Shelton, spent more time caring for Chris.
 

 In August 2007, without Shelton's knowledge, Wise and Weideman approached an attorney and requested a document allowing them to care for Chris. Subsequently, Wise, Weideman, and Shelton executed an appointment of guardianship ("2007 guardianship appointment") that purported to grant Weideman and Wise legal guardianship of Chris. Shelton requested an addendum to the 2007 guardianship appointment that stated "the parties agree that the appointment is temporary."
 

 After executing this document, Wise and Weideman continued caring for Chris just as they had done prior to signing the document. Shelton continued to live with Weideman and Wise on an ongoing basis and later lived with them with her boyfriend on a part-time basis until Wise demanded that Shelton leave the residence and not return. When Shelton returned, she drove her vehicle into the gate, and Wise called law enforcement. Subsequently, although Shelton spent some time in
 
 *878
 
 a rehabilitation center, her mental health issues continued for the next few years. Specifically, she exhibited erratic behaviors consistent with bipolar disorder, which remained untreated except through self-medication with prescription narcotics, drugs, and alcohol. Shelton continued to live part-time with Weideman and Wise, but sometime in 2009, Wise again banned Shelton from the residence.
 

 In late 2009, although Wise and Weideman separated and Weideman relocated from Wise's home, Wise and Weideman continued to care for Chris, and Chris split time between the two residences. Following the separation, Shelton spent time at Weideman's new residence and continued to stay with Wise on a part-time basis, until Wise made Shelton relocate from her house in January 2010. Wise banned Shelton from returning to her house, even when Chris was staying there. Wise also attempted to prohibit Shelton from seeing Chris when he stayed at Weideman's residence. Wise told Shelton that she was not entitled to care for Chris and that she intended to supervise any contact between Shelton and Chris. However, Shelton was able to exercise visitation with Chris through Weideman. In May 2010, Shelton gave birth to another child, Charlie,
 
 [2]
 
 whose rights are not at issue in this appeal. Around August 2010, Shelton relapsed and was admitted into another rehabilitation center.
 

 By the fall of 2011, Shelton's life improved. She secured her own housing and regularly attended therapy classes. She also discovered a medication regime that worked, and, except for one minor relapse in 2011 when she smoked marijuana, she remained sober. Following Weideman and Wise's separation, Chris began splitting time between the two, and Shelton exercised visitation with Chris through Weideman. During this time, Shelton attempted to assert parental control over Chris and act in the role of his parent.
 

 *416
 
 In 2012, Shelton and Weideman agreed that Weideman should have custody of Chris. Subsequently, Weideman filed a complaint for custody of Chris, Shelton consented, and the trial court entered an initial child custody consent order on 1 March 2012 ("2012 custody order") granting Weideman custody of Chris. In June 2012, Weideman exercised her exclusive custody of Chris by prohibiting contact between Wise and Chris.
 

 On 31 August 2012, Wise filed motions to intervene and to set aside the custody order, as well as a motion for custody and visitation and for breach of the 2007 guardianship appointment. Wise alleged,
 
 inter alia,
 

 *879
 
 that Shelton had abdicated her protected parental status. Weideman filed a response and a motion to dismiss. After a hearing, the trial court denied Weideman's motion to dismiss, determined Wise's pleadings were sufficient to allege an action for abrogation of Shelton's protected parental status, and granted Wise's motion to intervene.
 

 After additional motion hearings, the trial court entered an order on 15 August 2014 ("initial 2014 custody order") that was amended on 3 November 2014 ("amended 2014 custody order") to add,
 
 inter alia,
 
 findings that Shelton did not intend to abdicate complete responsibility for Chris or that the care Weideman or Wise provided for Chris was intended to be permanent. To the contrary, the court found that Shelton intended the care to be temporary. The trial court also amended its conclusions of law, stating that "[Wise] has a relationship with [Chris] in the nature of a parent-child relationship[ ]" and had standing to intervene. However, the trial court repeated its conclusion that Wise failed to meet her burden of proving by clear, cogent, and convincing evidence that Shelton had abdicated her constitutionally protected parental rights. In addition, although the trial court again dismissed Wise's motions for custody and visitation, it omitted the words "with prejudice" from the amended 2014 custody order. However, the decretal portion of the amended 2014 custody order similarly upheld the custodial arrangement outlined in the 2012 custody order, and similarly concluded that the 2012 custody order remained in full force and effect. Wise appeals the amended 2014 custody order.
 

 II. Analysis
 

 Wise's arguments on appeal can be consolidated into two issues: whether the trial court erred by (1) concluding Wise failed to establish by clear and convincing evidence that Shelton acted inconsistently with her constitutionally protected parental status; and (2) dismissing Wise's motions for custody of and visitation with Chris.
 

 As an initial matter, we note that "in custody cases, the trial court sees the parties in person and listens to all the witnesses."
 
 Adams v. Tessener,
 

 354 N.C. 57
 
 , 63,
 
 550 S.E.2d 499
 
 , 503 (2001) (citation omitted). With this perspective, the trial court is able "to observe the demeanor of the witnesses and determine their credibility, the weight to be given their testimony and the reasonable inferences to be drawn therefrom."
 
 Yurek v. Shaffer,
 

 198 N.C.App. 67
 
 , 80,
 
 678 S.E.2d 738
 
 , 747 (2009) (citation omitted). This opportunity of observation "allows the trial court to detect tenors, tones and flavors that are lost in the bare printed record
 
 *880
 
 read months later by appellate judges."
 
 Adams,
 

 354 N.C. at 63
 
 ,
 
 550 S.E.2d at 503
 
 (citations and quotation marks omitted).
 

 A. Conduct Inconsistent with Protected Parental Status
 

 Wise contends the trial court erred by concluding that Shelton did not act inconsistently with her constitutionally protected parental status. We disagree.
 

 Parents have a fundamental right to make decisions concerning the care, custody, and control of their children. As long as a parent maintains his or her paramount interest, a custody dispute with a nonparent regarding those children may not be determined by the application of the 'best interest of the child' standard. However, the paramount status of parents may be lost ... where the natural parent's conduct is inconsistent with his or her constitutionally protected status.
 

 Rodriguez v. Rodriguez,
 

 211 N.C.App. 267
 
 , 276-77,
 
 710 S.E.2d 235
 
 , 242 (2011) (internal citations and some quotation marks omitted).
 

 *417
 
 Our review of "[w]hether ... conduct constitutes conduct inconsistent with the parents' protected status" is
 
 de novo.
 

 Id.
 

 at 276
 
 ,
 
 710 S.E.2d at 242
 
 (citation omitted) (alteration in original). Under this review, we "consider[ ] the matter anew and freely substitute[ ] [our] own judgment for that of the lower tribunal."
 
 State v. Williams,
 

 362 N.C. 628
 
 , 632-33,
 
 669 S.E.2d 290
 
 , 294 (2008) (citations and quotation marks omitted). Our analysis is a "fact-sensitive inquiry,"
 
 Boseman v. Jarrell,
 

 364 N.C. 537
 
 , 550,
 
 704 S.E.2d 494
 
 , 503 (2010), and this determination "must be viewed on a case-by-case basis."
 
 Owenby v. Young,
 

 357 N.C. 142
 
 , 147,
 
 579 S.E.2d 264
 
 , 268 (2003) (citation omitted). We are bound by the unchallenged findings of a trial court.
 
 See, e.g.,
 

 Peters v. Pennington,
 

 210 N.C.App. 1
 
 , 13,
 
 707 S.E.2d 724
 
 , 733 (2011) ("Unchallenged findings of fact are binding on appeal.") (citation omitted). A trial court must determine by "clear and convincing evidence" that a parent's conduct is inconsistent with his or her protected status.
 
 Adams,
 

 354 N.C. at 63
 
 ,
 
 550 S.E.2d at 503
 
 (citation omitted). Therefore, Wise's burden on appeal is to establish by clear and convincing evidence that Shelton acted inconsistently with her protected parental status.
 

 1. Custody Order
 

 Wise first contends that Shelton's consent to the 2012 custody order, which led to the trial court granting primary custody of Chris to
 
 *881
 
 Weideman, was clear and convincing evidence that Shelton acted inconsistently with her protected parental status. We disagree.
 

 "[I]f a parent cedes paramount decision-making authority, then, so long as he or she creates no expectation that the arrangement is for only a temporary period, that parent has acted inconsistently with his or her paramount parental status."
 
 Boseman,
 

 364 N.C. at 552
 
 ,
 
 704 S.E.2d at 504
 
 (citation omitted). In the instant case, Shelton, as Chris's mother, made temporary arrangements for Chris's care first when she executed the 2007 guardianship appointment, which stated explicitly that the appointment was temporary, and next when she consented to the 2012 custody order.
 

 At the custody hearings, Shelton testified that she never told Wise that the 2007 guardianship appointment would be permanent or that Wise would be Chris's parent, and that she never intended to mislead Weideman or Wise into thinking that they would parent Chris until he was an adult. Shelton testified that for a few months in 2007, she was not receiving treatment for her feelings of anxiety and depression, nor was she receiving prescription medications for other mental health issues. This struggle prompted her to seek help from Wise and Weideman to care for Chris, which triggered Wise and Weideman to discuss having an attorney draft the 2007 guardianship appointment. Shelton further testified that after the 2007 guardianship appointment was executed, she remained involved in Chris's life. When Shelton was doing well, she would be involved in Chris's life, holding him and playing with him and trying to help with caring for him. But when Shelton was not doing well, she would try to avoid Chris, so as to prevent Chris from seeing her under the influence of narcotics or exhibiting symptoms of her mental health issues. Weideman testified that Shelton agreed to sign the 2007 guardianship appointment "only if it were temporary because one day she hoped to be able to raise [Chris]." Indeed, Wise concedes that the 2007 guardianship appointment provided explicitly that "the parties agree that the appointment is temporary."
 

 Regarding the 2012 custody order, Wise contends that Shelton failed to indicate that she intended the custodial arrangement to be temporary. However, Wise is mistaken. The transcript of the custody hearings indicate that Shelton and Weideman intended a temporary arrangement. Shelton testified that she did not understand that the 2012 custody order would strip her of her right to parent Chris. Rather, Shelton understood that Weideman, unlike Wise, was willing to allow Shelton to undertake more of a parenting role for Chris at a time when she would be able to do so. Indeed, Weideman testified that "[Shelton] knew that [by] giving
 
 *882
 
 me legal custody [of Chris], [Shelton] would still be able to be a part of his life and hopefully some day be his parent[.]"
 
 *418
 
 Shelton's decision to consent to the 2012 custody order was based, in part, on her understanding that legally placing Chris in Weideman's care would allow Shelton to continue to be an active participant in Chris's life and provide her the opportunity to assert her role as Chris's parent to a progressively greater degree. The trial court made the following unchallenged findings of fact, which are binding on appeal:
 

 54. ... This decision [to execute the 2012 custody order] was based in part upon the desire of [Shelton] to be actively involved in [Chris's] life ..., and that by legally placing [Chris] in the care of [Weideman,] [Shelton] would continue to have the opportunity to be an active participant in [Chris's] life[.]
 

 ....
 

 58. ... [Shelton's] election to grant [Weideman] custody of [Chris] pursuant to the Order of 1 March 2012 was ... not inconsistent with her parental role for the following reasons:
 

 a. Prior to this time, while [Chris] was in the care of [Wise], [Shelton] was unable to assert her rights as a parent and was unable to have any real interaction with [Chris];
 

 b. [Weideman] had not interfered with [Shelton]'s ability to see [Chris] and represented a safe place for [Chris] to live on an ongoing basis while [Shelton] attempted to place herself in the position where she was able to assert her rights as a parent;
 

 c. [U]nder [Weideman]'s care, [Chris] was able to maintain a relationship with [Shelton,] and [Shelton] was able to provide care for [Chris];
 

 d. [Weideman] has always allowed [Shelton] access to and the ability to care for [Chris] in the best interest of [Chris;]
 

 e. [W]hen [Chris] was placed with [Weideman] on a primary basis, [Shelton] had access to and was able to provide care for [Chris], as well as providing a relationship for [Chris] with his sibling, including teaching
 
 *883
 
 [Chris] sign language in order to be able to communicate with his younger sibling.
 

 The trial court's findings illustrate that Shelton's execution of the 2012 custody order was not conduct inconsistent with her protected parental status. Rather than demonstrate that Shelton intended the 2012 custody order to further relinquish her parental authority, the findings illustrate that Shelton intended for the 2012 custody order to enable her to assert her right to parent Chris and to assume her role as Chris's mother to a progressively greater degree. The findings demonstrate that Wise purposefully impeded Shelton from exercising her right to parent Chris, and that executing the 2012 custody order that granted Weideman sole custody of Chris was one of the very limited ways by which Shelton would be able to assert her role as Chris's parent. Therefore, the findings demonstrate not that Shelton intended for the 2012 custody order to grant Weideman permanent custody of Chris, but that she intended for the 2012 custody order to provide her with the opportunity to assume her role as Chris' mother in the future.
 

 Wise has failed to establish by clear and convincing evidence that Shelton's execution of the 2007 guardianship appointment or the 2012 custody order conduct inconsistent with her protected parent status. Therefore, we overrule Wise's challenge.
 

 2. Responsibilities Attendant to Rearing Chris
 

 Wise next contends that the trial court erred by concluding Shelton did not act inconsistently with her protected status, because Wise presented clear and convincing evidence that Shelton failed to shoulder the responsibilities attendant to rearing a child. We disagree.
 

 Although Wise cites to
 
 Price v. Howard
 
 for the proposition that "the parent may no longer enjoy a paramount status if ... she fails to shoulder the responsibilities that are attendant to rearing a child,"
 
 346 N.C. 68
 
 , 79,
 
 484 S.E.2d 528
 
 , 534 (1997), she has failed to apply that case or any other authority to the facts of this case.
 
 Moss Creek Homeowners Ass'n, Inc. v. Bissette,
 

 202 N.C.App. 222
 
 , 231,
 
 689 S.E.2d 180
 
 , 186 (2010) ("[T]he [party] appl[ied] no facts from
 
 *419
 
 the record to the case law cited. Accordingly, this argument is deemed abandoned. N.C. R.App. P. 28(b)(6) (2009)."). In support of her argument, Wise cited only to an unpublished opinion from this Court, but failed to apply facts from the record to the case cited. Moreover, she failed to include a copy of this opinion at the end of her brief. Rule 30 of the North Carolina Rules of Appellate Procedure provides:
 

 *884
 
 (3) An unpublished decision of the North Carolina Court of Appeals does not constitute controlling legal authority. Accordingly, citation of unpublished opinions in briefs, memoranda, and oral arguments in the trial and appellate divisions is disfavored, except for the purpose of establishing claim preclusion, issue preclusion, or the law of the case. If a party believes, nevertheless, that an unpublished opinion has precedential value to a material issue in the case and that there is no published opinion that would serve as well, the party may cite the unpublished opinion if that party serves a copy thereof on all other parties in the case and on the court to which the citation is offered. This service may be accomplished by including the copy of the unpublished opinion in an addendum to a brief or memorandum.
 

 N.C.R.App. P. 30(3)(e)(3).
 

 Nonetheless, we conclude that Wise has failed to carry her burden of proving by clear and convincing evidence that Shelton failed to shoulder the responsibilities attendant to rearing Chris. Wise contends that the 2007 guardianship appointment, Wise and Weideman co-parenting Chris for five-and-one-half years, and Shelton using drugs and disappearing for days, are clear and convincing evidence that Shelton failed to shoulder the responsibilities attendant to raising Chris. We disagree.
 

 The trial court made the following unchallenged findings:
 

 31. Based upon a reading of [the 2007 guardianship appointment] and all the competent evidence in this matter, the Court does not find that the intent of [Shelton] was to abdicate complete responsibility for her child, or that any intent to allow [Weideman] or [Wise] to provide care for her child was intended to be permanent. Rather, and to the contrary, the Court finds that this assignment by [Shelton] was intended by [Shelton] to be temporary in nature.
 

 ....
 

 38. That [Shelton's] admittance into Copestone in 2005, relapse in 2007, and Neil Dobbins in 2010[, rehabilitation centers,] are all indicative of the struggles [Shelton] faced at the intersection of untreated mental health issues and self-medicating that turns into addiction. That given
 
 *885
 
 [Shelton's] long journey towards seeking professional help, and then subsequent journey of discovering a medication regiment that worked to treat these issues, and later behavioral therapies and remedies to assist [Shelton] realize that she has choices where before all of these treatments [Shelton] testified she would only feel trapped by her illness and react in anger, that given all of these journeys coupled with the fact that [Shelton] is a high school drop-out with very limited economical means, that temporary guardianship and custody must give a birth mother the time and space to learn how to take care of herself so that she can be a fully present mother for her son. The Court notes that [Shelton] has made and is making progress in this journey and that [Shelton's] progress can be tracked with her involvement and increased parenting role in [Chris's] life as described by [Weideman], [Shelton], and [Shelton's] biological grandmother[.]
 

 39. [Wise] testified that [Shelton] did not take care of [Chris] and would often be upset with [Chris] if [he] cried or made noise at night. [Wise] further testified that she and [Weideman] would ask [Shelton] to leave the residence if it was upsetting [Chris]. The Court notes that on these occasions [Shelton] would leave the residence. The Court cannot find that the request to have [Shelton] leave the residence, or compliance by [Shelton] with this request, is an act contrary to the parental responsibility and rights of [Shelton] when the evidence supports that this was an appropriate decision.
 

 *420
 
 40. While [Wise] testified that [Shelton] never took parenting responsibilities, the Court does not find this to be credible; when considering the competent testimony of [Weideman], [Shelton,] and [Wise], the Court finds that [Shelton] did assume certain parenting responsibilities for [Chris], [but] did also rely upon both [Weideman] and [Wise] to care for [Chris].
 

 ....
 

 42. That [Shelton] never expressed any desire or intention for [Weideman] and [Wise] to provide for the sole and exclusive care for [Chris]; in fact, the Court finds [to] the contrary, that the guardianship papers and other statements
 
 *886
 
 made were raised initially by [Wise], and that [Shelton], in fact, objected to the supposition that [Weideman] and [Wise] would be awarded the care for [Chris].
 

 ....
 

 47. That [Wise] attempted to keep Shelton away from [Chris] when [he] was staying at [Wise's] respective residence; that the intent of [Wise] to prevent [Shelton] from staying at her residence when [Chris] was living in that home, and to even prevent [Shelton] from seeing [Chris] when [he] was at [Weideman's] residence. To which [Weideman] testified that she simply would not tell [Wise] when [Shelton] was present at her home with [Chris].
 

 48. That the intentional acts of [Wise] to prevent [Shelton] from being in the presence of [Chris] was not the intent or desire of [Shelton], and that [Shelton] lacked the ability, self-esteem, and resources to undertake any real act or actions to establish her role as a parent in [Chris's] life.... Accordingly, the Court finds that [Wise] cannot simultaneously attempt to prevent [Shelton] from having a relationship with her child, and then hold this against [Shelton.]
 

 ....
 

 50. The Court further finds, based upon the testimony of [Wise] that [Wise] never agreed, and would not have agreed, to let [Shelton] take [Chris] or have a parental role over [Chris]. [Wise] further testified that she wanted [Chris] to view his own biological mother, [Shelton], as a big sister, and went further stating, "I believe [Chris] is mine ... or at least half mine." The Court believes [Wise's] response when asked if between 2006 to 2012, at no time would [Wise] have allowed [Shelton] to take on a parenting role, to which [Wise] responded, "Correct."
 

 These unchallenged findings demonstrate that Shelton was suffering from untreated mental health issues for the majority of Chris's life, but that she made qualitative progress toward resolving these issues that previously hindered her from asserting her role as Chris's parent. We agree with the trial court that Wise cannot simultaneously intentionally prevent Shelton from having a relationship with Chris, and then argue that Shelton has failed to shoulder her burden to care for Chris. The evidence indicates that Shelton recognized that she needed to relinquish
 
 *887
 
 some of her parental authority to Weideman and Wise while she sought treatment for her mental health issues and her problems of addiction, until she was able to care for Chris. Wise has failed to establish by clear and convincing evidence that Shelton failed to shoulder the responsibilities attendant to raising Chris, such that she has abdicated her protected parent status. Therefore, we overrule Wise's challenge.
 

 B. Validity of Custody Order
 

 Wise contends the trial court erred by upholding the 1 March 2012 custody order, because it was entered in violation of N.C. Gen.Stat. §§ 50A-205(a) and 50A-209. Specifically, Wise contends the custody order was invalid and unenforceable, because the initial custody complaint failed to disclose Wise's custodial and parental relationship to Chris, Wise was not joined in the initial custody complaint as a necessary party under Rule 19 of the North Carolina Rules of Civil Procedure, and the initial complaint failed to disclose any potential putative fathers. We disagree.
 

 " N.C. Gen.Stat. § 50A-205 provides that notice and an opportunity to be heard must be provided to all interested parties before a child custody determination can be made."
 
 Mitchell v. Mitchell (now Norwich),
 

 199 N.C.App. 392
 
 , 398,
 
 681 S.E.2d 520
 
 , 525 (2009)
 

 *421
 
 (citation omitted). This includes "any person having physical custody of the child." N.C. Gen.Stat. § 50A-205(a) (2015). In this case, Wise had physical custody of Chris. Therefore, she had a right to notice of the initial custody hearing. Although Wise was not given notice of the initial custody hearing, the trial court granted her motion to intervene in the matter, and Wise was subsequently joined as a party to the custody proceedings. After multiple days of hearings, in which Wise participated, the trial court determined that, even though Wise had a relationship with Chris, the custodial arrangement of the initial custody order was appropriate. In addition, the trial court dismissed Wise's motions for custody and visitation without prejudice.
 

 Assuming,
 
 arguendo,
 
 that the custody order was initially entered in error because Wise was not given proper notice of the initial custody hearing, this error was resolved when the trial court allowed Wise to intervene and participate in the custody proceedings. Although Wise appealed the amended custody order, not the initial custody order, the amended custody order not only references the initial custody order, but also incorporates the trial court's conclusion of law that the custodial arrangement outlined in the initial custody order awarding Weideman custody of Chris was a proper initial custody determination.
 

 *888
 
 This same rationale, that any error arising from Weideman and Shelton's failure to give Wise notice of the initial custody proceeding was resolved after Wise was joined as a party to the custody proceedings, also applies to Wise's challenge that initially she was not joined as a necessary party. Therefore, we overrule these challenges.
 

 As to Wise's challenge that Weideman's "fraudulent exclusion of the likely biological fathers[ ] render[ed] the [consent order] invalid and unenforceable," we note that, once again, Wise has failed to apply any authority to the facts of this case.
 
 See
 
 N.C.R.App. P. 28(b)(6). Nonetheless, we note that the trial court found the following unchallenged facts:
 

 8. ... The father of [Chris], as of the date of the hearing, was not known; there was no service on the father or putative father at the time of the filing of the Complaint, nor was evidence presented by any person or party to this action during this trial that paternity had been established concerning [Chris].
 

 ....
 

 33. That [Chris's] father had yet to make an appearance or be present in the life of the child, in any way, shape or form [from Chris's birth until execution of the 2007 guardianship appointment].
 

 We recognize that the record does contain an affidavit from Greg Clinkscales ("Clinkscales"), the father of Shelton's other minor child, Charlie, which was attached to Wise's Rule 59 and 60 motions after the trial court entered its custody order on 15 August 2014. The affidavit states in pertinent part:
 

 3. [Shelton] and I have one child together, that I am certain of, [Charlie], born May 31, 2010. I have had physical custody of [Charlie] since two (2) months after he was born.
 

 4. [Shelton] told me that [Chris] is my child and that there was no doubt about it; she told me this prior to May 2013.
 

 However, the record contains no evidence that Clinkscales or any other putative father contested notice of the initial custody hearing or of the subsequent custody proceedings. Clinkscales was not joined as a party to this appeal pursuant to N.C.R.App. P. 5(a). Therefore, this issue is not properly before us, and we dismiss this challenge.
 

 *889
 

 C. Trial Court's Failure to Address Visitation
 

 Wise's next argument pertains to the trial court's failure to address visitation. Specifically, Wise contends: "The trial court's Order noted that visitation was an issue, but, failed to enter any findings or conclusions that addressed visitation, and the Order specifically failed to address whether visitation with Wise is in the child's best interests." However, "[a]s we have concluded that defendant did not act inconsistently with her status as a parent, and the trial court did not make a finding that defendant was unfit, there was no basis for the trial
 
 *422
 
 court to grant visitation to [Wise]."
 
 Rodriguez,
 

 211 N.C.App. at 279
 
 ,
 
 710 S.E.2d at 244
 
 (citation omitted). The trial court did not err by dismissing Wise's motion for visitation of Chris. We overrule this challenge.
 

 Because the trial court concluded that Wise failed to establish that Shelton acted inconsistently with her constitutionally protected parental status, we do not address Wise's additional challenges on appeal.
 

 III. Conclusion
 

 Since the trial court did not err by concluding Wise failed to establish by clear and convincing evidence that Shelton had acted inconsistently with her constitutionally protected parental status, the trial court also did not err in dismissing Wise's motions for custody and visitation. Accordingly, we affirm the trial court's order.
 

 AFFIRMED.
 

 Judges ELMORE and ZACHARY concur.
 

 [1]
 

 A pseudonym is used to protect the minor's identity.
 

 [2]
 

 A pseudonym is used to protect the minor's identity.