TYSON, Judge.
 

 *248
 
 Respondent-parents appeal from an order granting full physical and legal custody of their child, D.A., to court-approved caretakers. We vacate and remand.
 

 I. Background
 

 Respondents are married and both serve as active-duty marines in the United States Marine Corps. D.A. was born in June 2014. On 9 July 2014, Respondents sought medical treatment for D.A. after Respondent-father observed dried blood in D.A.'s mouth and nose. D.A. was hospitalized for over two weeks while being treated for a pulmonary hemorrhage.
 

 Respondents sought further medical care for D.A. on 16 September 2014. D.A. was evaluated for possible maltreatment and a blood disorder. A skeletal survey revealed a healing rib fracture, which was not present in an earlier skeletal survey in July 2014. After a medical evaluation, D.A. was diagnosed as suffering from child physical abuse.
 

 Following an investigation by law enforcement, Respondent-mother was charged with felony assault inflicting serious bodily injury,
 
 *731
 
 felony child abuse, and misdemeanor contributing to the delinquency of a juvenile. Respondent-father was charged with misdemeanor contributing to the delinquency of a juvenile. Respondent-mother subsequently pled guilty to misdemeanor child abuse. Respondent-father's charge was dismissed.
 

 On 22 September 2014, the Onslow County Department of Social Services ("DSS") filed a juvenile petition, alleging that D.A. was abused and neglected. DSS obtained nonsecure custody of D.A. the same day. Following a hearing, the trial court entered an order on 15 June 2015 adjudicating D.A. as an abused and neglected juvenile. Respondents were ordered to submit to mental health and psychological evaluations, follow all resulting recommendations, and complete parenting classes. The trial court held a permanency planning hearing on 13 January 2016, after which the court entered an order establishing a primary permanent plan of reunification "with a parent, with a secondary plan of custody with a relative or court-approved caretaker." After a 31 August 2016 permanency planning hearing, the trial court entered an order on 12 May 2017, which granted custody of D.A. to his foster parents and waived further review. Respondents timely filed notice of appeal.
 

 *249
 

 II. Issues
 

 Respondent-father contends the trial court erred by: (1) finding and concluding that he had acted inconsistently with his constitutionally protected status as a parent; (2) finding that returning the juvenile to the home of his parents would be contrary to the juvenile's best interests; (3) placing the juvenile in the custody of the foster parents as the most reasonable permanent plan; and, (4) ruling that it would be in the best interests of the juvenile for him to be placed in the full legal and physical custody of the foster parents.
 

 Respondent-mother contends: (1) the trial court's findings were not supported by clear, cogent, and convincing evidence and it failed to make the necessary findings of fact to cease reunification efforts with Respondent-mother and to grant custody to D.A.'s foster parents; and, (2) the evidence presented at the permanency planning hearing did not support the trial court's finding that Respondent-mother has unresolved mental health issues, and the trial court abused its discretion to make such a finding.
 

 III. Standard of Review
 

 "A trial court must determine by 'clear and convincing evidence' that a parent's conduct is inconsistent with his or her [constitutionally] protected status."
 
 Weideman v. Shelton
 
 , --- N.C. App. ----, ----,
 
 787 S.E.2d 412
 
 , 417 (2016) (citation omitted),
 
 disc. review denied
 
 ,
 
 369 N.C. 481
 
 ,
 
 795 S.E.2d 367
 
 (2017). "This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition."
 
 In re C.M
 
 .,
 
 183 N.C. App. 207
 
 , 213,
 
 644 S.E.2d 588
 
 , 594 (2007).
 

 Our review of "[w]hether ... conduct constitutes conduct inconsistent with the parents' [constitutionally] protected status" is
 
 de novo
 
 .
 
 Rodriguez v. Rodriguez,
 

 211 N.C. App. 267
 
 , 276,
 
 710 S.E.2d 235
 
 , 242 (2011) (citation omitted). Under this review, we "consider[ ] the matter anew and freely substitute[ ] [our] judgment for that of the lower tribunal."
 
 In re A.K.D.
 
 ,
 
 227 N.C. App. 58
 
 , 60,
 
 745 S.E.2d 7
 
 , 8 (2013) (citation omitted).
 

 IV. Analysis
 

 A. Respondent-Father's Appeal
 

 Respondent-father argues that the trial court erred in finding and concluding that he acted inconsistently with his constitutionally protected status as a parent. We agree.
 

 *250
 
 "A natural parent's constitutionally protected paramount interest in the companionship, custody, care, and control of his or her child is a counterpart of the parental responsibilities the parent has assumed and is based on a presumption that he or she will act in the best interest of the child."
 
 Price v. Howard
 
 ,
 
 346 N.C. 68
 
 , 79,
 
 484 S.E.2d 528
 
 , 534 (1997) (citations omitted). "[A] natural parent may lose his constitutionally protected right to the control of his children in one of two ways: (1) by a finding of unfitness of the
 
 *732
 
 natural parent, or (2) where the natural parent's conduct is inconsistent with his or her constitutionally protected status."
 
 In re D.M.
 
 ,
 
 211 N.C. App. 382
 
 , 385,
 
 712 S.E.2d 355
 
 , 357 (2011) (alteration in original) (quoting
 
 David N. v. Jason N.
 
 ,
 
 359 N.C. 303
 
 , 307,
 
 608 S.E.2d 751
 
 , 753 (2005) ). As is present here, "to apply the best interest of the child test in a custody dispute between a parent and a nonparent, a trial court must find that the natural parent is unfit or that his or her conduct is inconsistent with a parent's constitutionally protected status."
 
 In re B.G.
 
 ,
 
 197 N.C. App. 570
 
 , 574,
 
 677 S.E.2d 549
 
 , 552 (2009).
 

 DSS and the guardian
 
 ad litem
 
 ("GAL") argue that, because custody was granted from a non-parent (DSS) to a non-parent (the foster parents), the trial court did not need to find that the parents had acted inconsistently with their constitutionally protected status prior to awarding permanent custody to the foster parents. In support of this position, they cite
 
 In re J.K.
 
 ,
 
 237 N.C. App. 99
 
 ,
 
 766 S.E.2d 698
 
 ,
 
 2014 WL 5335274
 
 (2014) (unpublished). In
 
 In re J.K.
 
 , this Court held that the trial court was not required to find that the parents were unfit or had acted inconsistently with their constitutionally protected status before transferring custody because "the court in the order under review did not transfer legal custody from a parent to a nonparent, but instead transferred legal and physical custody from DSS to a relative."
 

 Id.
 

 at
 
 2014 WL 5335274
 
 *5-6.
 

 As an initial issue, DSS and the GAL fail to inform this Court of the
 
 In re J.K.
 
 opinion's unpublished status, in violation of N.C. R. App. P. 30(e)(3). Moreover, DSS and the GAL fail to acknowledge the next statement in the opinion that "[w]e note, nonetheless, that at the time when the court awards
 
 permanent
 
 custody of [the juvenile], it must make these determinations prior to awarding custody to a nonparent."
 

 Id.
 

 at
 
 2014 WL 5335274
 
 *6 (emphasis supplied).
 

 Because the trial court awarded
 
 de facto
 
 permanent custody of D.A. to the foster parents and waived further review, the trial court was first required to find that the parents were either unfit or had acted inconsistently with their constitutionally protected status as parents.
 
 See
 

 In re P.A.
 
 ,
 
 241 N.C. App. 53
 
 , 56, 66-67,
 
 772 S.E.2d 240
 
 , 243, 249 (2015)
 

 *251
 
 (instructing the trial court on remand to make findings regarding whether the respondent had lost her constitutionally protected right of control over her child after the trial court had initially failed to do so when transferring custody from DSS to a nonparent).
 

 In awarding permanent custody of D.A. to his foster parents, the trial court found and concluded that "[R]espondents have acted inconsistently with their constitutionally protected status as parents." In support of this finding and conclusion, the trial court found that
 

 this juvenile has been in the custody of [DSS] for nearly two years, and in that time, neither respondent parent has taken responsibility or provided a plausible explanation for the injuries that occurred to the juvenile while he was in their care. That while respondent father's charges were dismissed, and despite pleading guilty to the charges imposed upon her for harming her child, respondent mother continues to maintain that she did not inflict the juvenile's injuries, and this remains a barrier to reunification as the home remains an injurious environment.
 

 Respondent-father contends that the trial court held him responsible for D.A.'s injuries, despite a lack of any evidence tending to show Respondent-father caused or knew the cause of D.A.'s injuries. The trial court's findings are insufficient to support a conclusion that Respondent-father was unfit or had acted inconsistently with his constitutionally protected status as a parent.
 

 In the case of
 
 In re Y.Y.E.T.
 
 ,
 
 205 N.C. App. 120
 
 ,
 
 695 S.E.2d 517
 
 ,
 
 disc. review denied
 
 ,
 
 364 N.C. 434
 
 ,
 
 703 S.E.2d 150
 
 (2010), the trial court held both the respondent-parents responsible for the juvenile's injury where the court made findings that the injury was non-accidental, the parents were the sole caregivers for the juvenile when she sustained her injury, neither parent explained nor took responsibility for the juvenile's injury, and the trial court could not "separate the parents as to culpability."
 
 Id.
 
 at 124-25,
 
 695 S.E.2d at 520
 
 .
 

 In affirming the trial court's order, this Court stated that, "[a]s the child's sole care
 
 *733
 
 providers, it necessarily follows that Respondents were jointly and individually responsible for the child's injury. Whether each Respondent directly caused the injury by inflicting the abuse or indirectly caused the injury by failing to prevent it, each Respondent is responsible."
 
 Id.
 
 at 129,
 
 695 S.E.2d at 522-23
 
 .
 

 By contrast, in the present case, the trial court failed to make any finding that the juvenile's injuries were non-accidental or that
 
 *252
 
 Respondents were the sole caregivers for D.A. when he sustained his injuries. Moreover, even if the trial court intended to find that Respondents were the sole caregivers when D.A. suffered non-accidental injuries, the court's findings are unclear of which parent or parents the court assigned responsibility.
 

 The trial court's finding that the "injuries ... occurred to the juvenile while he was in [Respondents'] care" could suggest that the court intended to hold both parents responsible for D.A.'s injuries. However, the findings next state that "while respondent father's charges were dismissed, and despite pleading guilty to the charges imposed upon her for harming her child, respondent mother continues to maintain that she did not inflict the juvenile's injuries." This finding suggests the trial court looked to Respondent-mother as the cause for D.A.'s injuries.
 

 The trial court's findings do not explain how Respondent-father was culpable for D.A.'s injuries, unfit, or otherwise acted inconsistently with his constitutionally protected status as a parent to support its conclusion. Absent clear findings, based upon clear, cogent, and convincing evidence, demonstrating how Respondent-father acted inconsistently with his constitutionally protected status, the trial court erred in awarding permanent custody of D.A. to the foster parents. We vacate and remand for a new hearing.
 

 Respondent-father additionally challenges one of the trial court's findings of fact as unsupported by the evidence. We need not review Respondent-father's remaining arguments because of our holding that the trial court's findings do not support its ultimate finding and conclusion that Respondent-father acted inconsistently with his constitutionally protected status as parent.
 

 B. Respondent-Mother's Appeal
 

 Respondent-mother first contends that the trial court lacked clear, cogent, and convincing evidence and necessary findings of fact to cease reunification efforts with Respondent-mother and grant permanent custody to D.A.'s foster parents. In response, DSS and the GAL contend that the trial court did not cease reunification efforts in the order.
 

 We agree with Respondent-mother that the permanent order, without further scheduled hearings, effectively ceases reunification efforts. In the case of
 
 In re N.B.
 
 ,
 
 240 N.C. App. 353
 
 ,
 
 771 S.E.2d 562
 
 (2015), this Court held that the trial court ceased reunification efforts in the permanency planning order despite not explicitly doing so by "(1) eliminating reunification as a goal of [the juveniles'] permanent plan,
 
 *253
 
 (2) establishing a permanent plan of guardianship with [the prospective guardians], and (3) transferring custody of the children from [Youth and Family Services] to their legal guardians."
 
 Id.
 
 at 362,
 
 771 S.E.2d at 568
 
 .
 

 In this case, the order eliminated reunification as a goal of D.A.'s permanent plan, established a permanent plan of full legal and physical custody with the foster parents, and transferred custody of the child to the foster parents. In addition, the order waived regular periodic reviews and released all the attorneys for the parties and the GAL. While the trial court's order may not have explicitly ceased reunification efforts, these actions show its effect, in fact and in law, was to waive further review and cease reunification efforts.
 

 1. Ceasing Reunification
 

 We must now consider whether the trial court's order contains the necessary statutory findings to cease reunification efforts. Under our statutes: "Reunification shall remain a primary or secondary plan unless the court made findings under G.S. 7B-901(c) or makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety."
 

 *734
 
 N.C. Gen. Stat. § 7B-906.2(b) (2017). Here, the trial court failed to make findings under N.C. Gen. Stat. § 7B-901(c) (2017). The court could only cease reunification efforts after finding that those efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety.
 

 2. Statutory Requirements
 

 In order to cease reunification efforts in this way, the statute requires:
 

 the court shall make written findings as to each of the following, which shall demonstrate lack of success:
 

 (1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
 

 (2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
 

 (3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
 

 (4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.
 

 N.C. Gen. Stat. § 7B-906.2(d).
 

 *254
 
 Here, the trial court made findings related to the factors listed in N.C. Gen. Stat. § 7B-906.2(d)(1)-(3), all of which were largely favorable to Respondents. The trial court failed to make findings related to whether Respondents were acting in a manner inconsistent with D.A.'s health or safety. The order also contains no findings that embrace the requisite ultimate finding that "reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety."
 

 While the order does state that "the home remains an injurious environment" and that "a return home would be contrary to the best interests of the juvenile," these findings are not tantamount to a finding that reunification efforts would be unsuccessful or inconsistent with D.A.'s health or safety. These findings appear to be more directed at Respondent-mother's failure to admit she had caused D.A.'s injuries after pleading guilty to misdemeanor child abuse. The trial court failed to make the requisite findings required to cease reunification efforts. N.C. Gen. Stat. § 7B-906.2(d) clearly requires the trial court to do so before it ceases reunification efforts. We vacate the trial court's order and remand for further proceedings.
 

 Respondent-mother also challenges one of the findings as lacking in evidentiary support. In light of our holding, we need not review that challenge. We determine the trial court's findings do not support its decision to cease reunification efforts and make custody of D.A. with the foster parents permanent.
 

 V. Conclusion
 

 We vacate the trial court's order and remand for further proceedings. With respect to Respondent-father, the trial court is to make the statutory findings to determine whether Respondent-father is unfit or has acted inconsistently with his constitutionally protected status, and, if so, how. With respect to Respondent-mother, the trial court is to also make the necessary statutory findings and conclusions to determine whether to cease reunification efforts. All findings must be supported by clear, cogent and convincing evidence.
 
 It is so ordered.
 

 VACATED AND REMANDED.
 

 Judges CALABRIA and DAVIS concur.