IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-345

No. COA21-4

Filed 20 July 2021

Currituck County, No. 19 JA 34

IN THE MATTER OF N.Z.B.

Appeal by Respondent-Mother from order entered 16 October 2020 by Judge
Eula E. Reid in Currituck County District Court. Heard in the Court of Appeals 12
May 2021.

> *The Twiford Law Firm, PC, by Courtney S. Hull, for Currituck County*
> *Department of Social Services.*
>
> *Matthew D. Wunsche, for the Guardian ad Litem.*
>
> *Annick I. Lenoir-Peek, for Respondent-Mother.*
>
> *No brief filed on behalf of Respondent-Father.*

WOOD, Judge.

¶ 1       Respondent-Mother appeals a permanency planning order granting
guardianship of the minor child to his paternal grandmother. On appeal,
Respondent-Mother contends the trial court erred in finding she forfeited her
constitutionally protected parental status. Respondent-Mother further contends the
trial court lacked subject matter jurisdiction under the Uniform Child Custody

Jurisdiction Enforcement Act ("UCCJEA"). After careful review, we deny Currituck County Department of Social Services' ("Currituck County DSS") motion to supplement the record on appeal; deny Respondent-Mother's motion to strike Currituck County DSS's appellee brief and proposed supplement to the record on appeal; vacate the order of the trial court; and remand for further proceedings.

## I. Factual and Procedural Background

¶ 2     Respondent-Mother has four children. O.D. was born on June 13, 2001; C.B. was born on January 4, 2003; Noah[1] was born on May 12, 2005; and A.B., whose birthdate is not included in the record on appeal. [2]

¶ 3     In 2002, the Pasquotank County, North Carolina, Department of Social Services ("Pasquotank County DSS") conducted a child protective services investigation, "which yielded a substantiation of neglect, improper care, and injurious environment in regard to [Respondent-Mother's] oldest child, [O.D.]" Thereafter, O.D. resided with her maternal grandparents. In 2004, the Dare County, North Carolina, Department of Social Services ("Dare County DSS") accepted a report alleging Respondent-Mother neglected C.B. The report alleged Respondent-Mother left C.B. "in the care of a man who had been beaten with a metal pipe, [C.B.] witnessed

---

[1] *See* N.C. R. App. P. 42(b) (pseudonyms are used to protect the identity of the juveniles).

[2] O.D., C.B., and A.B. are not subject to this appeal. O.D. and C.B. have reached the age of majority, and A.B. remains in Respondent-Mother's care.

the assault, was covered in the blood of this man, and left alone without a caregiver." Subsequently, custody of O.D. and C.B. was awarded to their maternal grandparents on November 12, 2004.

¶ 4        On May 12, 2005, Respondent-Mother gave birth to Noah. In October 2005, Currituck County DSS "substantiated medical neglect regarding [Noah] for missing five medical appointments. The case was transferred to the Pasquotank County Department of Social Services and closed on February 9, 2006."

¶ 5        On July 19, 2006, Dare County DSS filed a petition to terminate Respondent-Mother's rights with respect to O.D. and C.B. On November 29, 2006, Currituck County DSS "substantiated a finding of neglect regarding [Noah]. [Respondent-Mother] was holding [Noah], who was an infant at the time, during a physical altercation with another individual." On September 21, 2006, the Dare County District Court terminated Respondent-Mother's parental rights with respect to O.D. and C.B.

¶ 6        While the juvenile proceeding concerning O.D. and C.B. was ongoing, Respondent-Mother moved several times. Respondent-Mother moved from Dare County to Currituck County, before relocating to James City County, Virginia. On May 4, 2007, the James City County Division of Social Services ("James City County DSS") filed an "[e]mergency [r]emoval [o]rder after a CPS report was received from Avalon shelter staff alleging that [Respondent-Mother] had left [Noah] unsupervised

on a number of occasions." Thereafter, James City County DSS was granted custody of Noah. Ultimately, Mr. and Mrs. Z, relatives of Respondent-Mother, were granted custody of Noah in November 2008. Noah resided with Mr. and Mrs. Z in Point Harbor, North Carolina. Respondent-Mother continued to reside in Williamsburg, Virginia. In October 2019, Mrs. Z died. On October 19, 2019, Respondent-Mother petitioned the James City County Juvenile and Domestic Relations District Court (the "James City Court") for custody of Noah.

¶ 7        In December 2019, approximately two months after Mrs. Z's death, Mr. Z contacted Currituck County DSS. Mr. Z disclosed he could no longer provide for Noah due to Noah's behavior after Mrs. Z's death and Noah's contact with Respondent-Mother. Mr. Z expressed his concern for Noah's well-being and whether Respondent-Mother would be able to provide adequate care for him.

¶ 8        Currituck County DSS filed a juvenile petition alleging Noah was a dependent juvenile on December 20, 2019. That same day, Noah was placed with his paternal grandmother ("Mrs. S"). On December 30, 2019, a non-secure custody hearing was held. Respondent-Mother was present and requested custody of Noah.

¶ 9        The Currituck County District Court (the "Currituck Court") reviewed the file and exercised temporary emergency jurisdiction. The trial court continued custody with DSS, allowed Noah to remain with Mrs. S, and granted Respondent-Mother supervised visitation of two-hours per week. Currituck County DSS filed a "Motion

to Determine Subject Matter Jurisdiction" on January 3, 2020. The Currituck Court entered an "Order on Jurisdiction" on January 7, 2020, finding Virginia had relinquished jurisdiction under the UCCJEA.[3]

¶ 10    On March 6, 2020, the adjudication and disposition hearing occurred. On March 16, 2020, the James City Court dismissed Respondent-Mother's petitions for custody because the petitions were "improperly filed. The proper filing would have been a [motion to amend]." The Currituck Court entered an order adjudicating Noah dependent on June 3, 2020.

¶ 11    In the adjudication and disposition order, the trial court made several findings about Respondent-Mother's history with North Carolina's child protective services and Virginia's child protective services. At disposition, Respondent-Mother was ordered to complete her "Out of Home Services Plan," which included completion of an online parenting course; cooperation with James City County DSS on the Interstate Compact on the Placement of Children ("ICPC") home study request; visitation; investigation of in-person parent resources; and payment of child support.

¶ 12    In March 2020, shortly after the adjudication and disposition hearing, COVID-19 restrictions were implemented. An in-person parenting class was cancelled, and Respondent-Mother's in-person visitations were suspended. Respondent-Mother

---

[3] Both North Carolina and Virginia have adopted the UCCJEA. *See* N.C. Gen. Stat. § 50A-101 *et seq.* and Va. Code Ann. § 20-146.1 *et seq.*

began her ICPC home study, but James City County DSS could not approve Respondent-Mother's home as a placement for Noah because she had not completed the necessary paperwork for a home study.

¶ 13 On August 11, 2020, a tree fell on Respondent-Mother's residence during a storm related to Hurricane Isaias, injuring Respondent-Mother's fiancé. Respondent-Mother's home was destroyed and later condemned. Respondent-Mother, her fiancé, and Respondent-Mother's youngest child, A.B., moved into temporary housing paid for by the American Red Cross. The James City County Housing Authority was aiding Respondent-Mother in finding alternative housing.

¶ 14 On August 18, 2020, Respondent-Mother attempted to complete the outstanding paperwork for James City County DSS to perform a home study. Respondent-Mother and her fiancé "were asked to bring their driver's license, social security card, birth certificate[,] and rabies vaccination for their pets. They only provided their driver's license and reported that they were not able to bring copies of the other documents[.]" Due to the outstanding paperwork and Respondent-Mother's housing situation, James City County DSS was unable to complete the ICPC home study.

¶ 15 A permanency planning hearing occurred on September 4, 2020. The Currituck Court found

> 91. The Court finds that [Respondent-Mother] has acted

> inconsistently with her constitutionally protected right to parent [Noah] in that: the child was previously adjudicated in Virginia to be a neglected child due to her actions; she failed to make sufficient progress in her case plan; and on this date, the Court found, pursuant to North Carolina General Statute §7B-906.1(d)(3), that efforts for reunification with [Respondent-Mother] would clearly be futile or would be inconsistent with the child's health and safety, and need for a safe, permanent home within a reasonable period of time [] and that efforts for reunification as defined in North Carolina General Statute §7B-101 shall no longer be required.

The trial court concluded Respondent-Mother was "not a fit or proper person for the care, custody and control of [Noah]," and had "acted in ways that [were] inconsistent with her constitutionally protected status as a parent." The court awarded guardianship to Noah's paternal grandmother, Mrs. S. Respondent-Mother filed her notice of appeal on October 16, 2020.[4]

## II. Discussion

Respondent-Mother contends the trial court erred in finding she acted inconsistently with her constitutionally protected parental status because the finding was not supported by clear, cogent, and convincing evidence. Respondent-Mother further argues the trial court erred in finding she had acted inconsistently with her constitutionally protected status because there was evidence to the contrary "and []

---

[4] Currituck County DSS moved to amend and supplement the record on appeal on March 8, 2021. In our discretion, we deny Currituck County DSS's motion.

some of the trial court's findings [] would indicate the opposite conclusion." Respondent-Mother also contests the district court's subject matter jurisdiction to adjudicate Noah as a dependent juvenile when the James City Court did not formally relinquish jurisdiction.

After careful review, we vacate the order of the trial court due to the failure to apply the correct evidentiary standard in finding Respondent-Mother acted inconsistently with her constitutionally protected parental status. As we vacate the order of the trial court, we do not reach the merits of Respondent-Mother's other arguments on appeal.

We review the determination of whether parental conduct is inconsistent with the parent's constitutionally protected status *de novo*. *In re D.A.*, 258 N.C. App. 247, 249, 811 S.E.2d 729, 731 (2018). "A parent has an interest in the companionship, custody, care, and control of his or her children that is protected by the United States Constitution." *Boseman v. Jarrell*, 364 N.C. 537, 549, 704 S.E.2d 494, 502 (2010) (alterations, quotation marks, and citation omitted). "So long as a parent has this paramount interest in the custody of his or her children, a custody dispute with a nonparent regarding those children may not be determined by the application of the best interest . . . standard." *Id.* at 549, 704 S.E.2d at 503 (citation and quotation marks omitted). However, a parent can forfeit their right to custody of their child by unfitness or acting inconsistently with their constitutionally protected status. *Id.*

¶ 19 A determination that a parent has forfeited this status must be based on clear and convincing evidence. *In re D.A.*, 258 N.C. App. at 249, 811 S.E.2d at 731; *Weideman v. Shelton*, 247 N.C. App. 875, 880, 787 S.E.2d 412, 417 (2016). The trial court must clearly address whether the parent is unfit or if their conduct has been inconsistent with their constitutionally protected status as a parent, where the trial court considers granting custody or guardianship to a nonparent. *In re B.G.*, 197 N.C. App. 570, 574, 677 S.E.2d 549, 552 (2009); *In re J.L.*, 264 N.C. App. 408, 419, 826 S.E. 258, 266 (2019). "[T]he trial court must be clear that it is applying the 'clear, cogent, and convincing' standard" when it determines a parent has acted inconsistently with their paramount right to parent their children. *Moriggia v. Castelo*, 256 N.C. App. 34, 43, 805 S.E.2d 378, 383 (2017).

¶ 20 " '[T]here is no bright line beyond which a parent's conduct' amounts to action inconsistent with the parent's constitutionally protected paramount status." *In re A.C.*, 247 N.C. App. 528, 536, 786 S.E.2d 728, 735 (2016) (quoting *Boseman*, 364 N.C. at 549, 704 S.E.2d at 503). Determining whether a parent has forfeited their constitutionally protected status is a fact specific inquiry. *Id.* (citations omitted). In making such a determination, the trial "court must consider 'both the legal parent's conduct and his or her intentions' *vis-à-vis* the child." *Id.* (quoting *Estroff v. Chatterjee*, 190 N.C. App. 61, 70, 660 S.E.2d 73, 78 (2008)).

¶ 21 Here, the trial court found

> 91. [T]hat [Respondent-Mother] has acted inconsistently with her constitutionally protected right to parent [Noah] in that: the child was previously adjudicated in Virginia to be a neglected child due to her actions; she failed to make sufficient progress in her case plan; and on this date, the Court found, pursuant to North Carolina General Statute §7B-906.1(d)(3), that efforts for reunification with [Respondent-Mother] would clearly be futile or would be inconsistent with the child's health and safety, and need for a safe, permanent home within a reasonable period of time [] and that efforts for reunification as defined in North Carolina General Statute §7B-101 shall no longer be required.

However, the trial court's written order does not state that it applied the clear and convincing evidence standard to its finding that Respondent-Mother acted inconsistently with her constitutionally protected parental status; nor did the trial court state what standard it used in open court. Where the trial court fails to state the standard of proof applied in its decision, the case must be remanded. *In re J.L.*, 264 N.C. App. at 419-20, 826 S.E.2d at 266-67. Accordingly, we vacate and remand for the application of the clear and convincing standard.

Respondent-Mother further contends the Currituck Court lacked subject matter jurisdiction to enter an adjudication, disposition, and review and permanency planning order when it failed to follow the procedure set out in the UCCJEA for obtaining jurisdiction. As we vacate the trial court's order, we need not address Respondent-Mother's other arguments on appeal. On remand, however, the trial court should make findings addressing its exercise of jurisdiction under the UCCJEA.

### III.    Conclusion

The trial court's order fails to indicate that it applied the clear and convincing evidence standard in determining Respondent-Mother acted inconsistently with her constitutionally protected status as a parent.  Therefore, we vacate the order of the trial court and remand this matter for the application of the clear and convincing standard and for appropriate findings regarding the Currituck Court's jurisdiction under the UCCJEA.

VACATED AND REMANDED.

Judges TYSON and HAMPSON concur.