IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-721

Filed 15 October 2024

Buncombe County, Nos. 18 JA 334, 20 JA 94, 20 JA 333

IN THE MATTER OF: Q.J.P., M.P., K.L.

Appeal by respondent-mother from orders entered 13 February 2023 by Judge Susan M. Dotson-Smith in District Court, Buncombe County. Heard in the Court of Appeals 6 September 2024.

> *Jack Densmore, Esq., for petitioner-appellee Buncombe County Department of Health and Human Services.*
>
> *Parry Law, PLLC, by Neil A. Riemann, for the guardian ad litem.*
>
> *Robinson & Lawing, LLP, by Christopher M. Watford, for respondent-appellant mother.*

STROUD, Judge.

In this appeal from initial permanency planning orders concerning three of her minor children, respondent-mother contends that the district court violated statutory mandates set forth in the Juvenile Code by failing to make the necessary written findings in support of the concurrent plans the court established for the juveniles—plans which did not include their reunification with respondent-mother. We agree, and as explained below, the controlling statutes and caselaw require us to remand all three permanency planning orders to the district court for entry of the missing required written findings.

## I. Factual Background and Procedural History

At the time of the permanency planning hearing which resulted in the orders from which this appeal is taken, Mother had three children, Quincy, Mary, and Keith,[1] who were born in 2017, 2019, and 2020, respectively. Each of these juveniles has a different father, none of whom is a party to this appeal. However, Mother's relationship with Keith's father played a role in the filing of the petitions which led to this appeal, as discussed in greater detail below.

The Buncombe County Department of Health and Human Services ("DHHS") became involved with the family in January 2020, prior to Keith's birth, due to reports of domestic violence between Mother and Keith's father, and juvenile petitions were filed with respect to Quincy and Mary on 9 March 2020. Quincy and Mary were placed in the non-secure custody of DHHS.

Shortly after Keith was born in August 2020, DHHS received another report of domestic violence between Mother and Keith's father. On 2 September 2020, Mother and DHHS entered into a safety plan wherein Mother agreed that her mother would supervise any contact between Keith and herself and that Mother would have no contact with Keith's father in the presence of any of the three children. Several weeks later, the maternal grandmother moved into Mother's home, and DHHS dismissed the prior juvenile petitions for Quincy and Mary and allowed all three

---

[1] Stipulated pseudonyms are used to protect the identity of the juveniles pursuant to Rules 3.1 and 42 of the North Carolina Rules of Appellate Procedure. *See* N.C. R. App. P. 3.1; *see also* N.C. R. App. P. 42.

children to reside in Mother's home with the grandmother as the juveniles' temporary safety provider. Mother was directed to "ensure the children have no contact with [Keith's] father[.]"

On 17 November 2020, DHHS received a report alleging that Keith's father (1) was living in Mother's home with the children in violation of the safety plan, (2) had "got[ten] mad and busted a television" in the presence of the children, and (3) had punched Mother, giving her a black eye. Three days later, on 20 November 2020, DHHS received information that law enforcement had conducted a traffic stop on Mother's vehicle just after midnight on that date, with Mother driving and Keith's father, Mary, and Keith also present in the vehicle. DHHS assumed custody of the children and filed new juvenile petitions alleging that each was a neglected juvenile. On 20 August 2021, the district court entered orders adjudicating each child as neglected, based in part on stipulations of Mother, and also entered dispositions in each matter.

Following ten days of hearings between December 2021 and August 2022, the district court entered an initial permanency planning order for each of the children on 13 February 2023. The court ordered that Quincy and Mary remain in the custody of DHHS and set their primary plans of care as guardianship with the secondary plan as reunification with their fathers. However, we also note that the order for Mary includes contradictory findings of fact regarding Mary's permanent plan. In finding of fact 23, the court states that the primary plan for Mary is "*adoption*, with a

secondary permanency plan of reunification with" her father. (Emphasis added). Yet in finding of fact 46, the court found that DHHS should "make reasonable efforts to finalize the primary permanency plan of *guardianship*[ ] and the secondary permanency plan of reunification with" Mary's father. (Emphasis added). In finding of fact 47, the court found that "guardianship is not [an] appropriate plan at this time" and that "adoption is an appropriate plan." "[T]he primary plan of adoption" is also mentioned in finding of fact 55.

Nonetheless, in the portion of the order containing conclusions of law, after ordering that Mary remain in the custody of DHHS, the court set Mary's primary permanent plan as guardianship with a secondary plan of reunification with her father and ordered DHHS to "make reasonable efforts to implement the primary permanency plan of guardianship[ ] and the secondary permanency plan of reunification with" Mary's father. In any event, on the key point for our resolution of this appeal—that reunification with Mother was not included as a permanent plan for Mary—the order was consistent and clear.

In its order for Keith, the district court found that reunification with either Mother or his father would be inconsistent with Keith's health and safety, and thus set his primary plan as adoption and his secondary plan as guardianship.

On 9 March 2023, Mother filed a notice to preserve right of appeal pursuant to North Carolina General Statute Sections 7B-1001(a)(5) and (8). Mother subsequently

filed a notice of appeal from the initial permanency planning orders on 15 May 2023

and an amended notice of appeal from the orders on 16 May 2023.

## II.    Analysis

Mother contends that the district court's initial permanency planning orders

for the children violated North Carolina General Statute Section 7B-906.2(b) by

eliminating reunification with Mother as a concurrent permanent plan without

making written findings as required under the statute.  We agree.

### A.  Standards of Review

> This Court reviews an order that ceases reunification
> efforts to determine whether the [district] court made
> appropriate findings, whether the findings are based upon
> credible evidence, whether the findings of fact support the
> [district] court's conclusions, and whether the [district]
> court abused its discretion with respect to disposition. The
> [district] court's findings of fact are conclusive on appeal if
> supported by *any* competent evidence. This is true even
> where some evidence supports contrary findings.
> Unchallenged findings are deemed to be supported by
> sufficient evidence and are [also] binding on appeal.

*In re P.T.W.*, 250 N.C. App. 589, 594, 794 S.E.2d 843, 848 (2016) (emphasis in original)

(citations and quotation marks omitted).

"We consider matters of statutory interpretation *de novo*."  *In re M.S.*, 247 N.C.

App. 89, 91, 785 S.E.2d 590, 592 (2016) (citation and quotation marks omitted).

Likewise, an alleged violation of a statutory mandate presents a question of law that

is considered *de novo*, under which standard we consider the issue anew and without

deference to the decision below. *See In re A.M.*, 220 N.C. App. 136, 137, 724 S.E.2d 651, 653 (2012).

**B. Grounds for Appellate Review**

As an initial matter, we must address the argument by the guardian *ad litem* ("GAL") and DHHS that Mother's appeal from the permanency planning orders for Quincy and Mary is not properly before this Court. Chapter 7B of the Juvenile Code—which governs abuse, neglect, and dependency matters—directs the district court to hold permanency planning hearings for juveniles who have been removed from their parents' custody. *See* N.C. Gen. Stat. § 7B-906.1(a) (2023). At each such hearing, "the court shall adopt one or more . . . permanent plans the court finds is in the juvenile's best interest[.]" N.C. Gen. Stat. § 7B-906.2(a) (2023) (setting forth six options including, *inter alia*, reunification, adoption, and guardianship). More specifically, "the court shall adopt concurrent permanent plans and shall identify the primary plan and secondary plan. Reunification shall be a primary or secondary plan unless the court" makes specific written findings "the permanent plan is or has been achieved[.]" N.C. Gen. Stat. § 7B-906.2(b).

Chapter 7B also specifies what abuse/neglect/dependency "orders may be appealed directly to the Court of Appeals." N.C. Gen. Stat. § 7B-1001 (2023). Pertinent to this matter, a direct appeal to this Court is permitted from a permanency planning order that

eliminat[es] reunification, as defined by G.S. 7B-101(18c),

as a permanent plan by either of the following:

a. A parent who is a party and:

> 1. Has preserved the right to appeal the order in writing within 30 days after entry and service of the order.
>
> 2. A termination of parental rights petition or motion has not been filed within 65 days of entry and service of the order.
>
> 3. A notice of appeal of the order eliminating reunification is filed within 30 days after the expiration of the 65 days.

b. A party who is a guardian or custodian with whom reunification is not a permanent plan.

N.C. Gen. Stat. § 7B-1001(a)(5).

It is undisputed that Mother is "[a] parent who is a party" and that she "preserved [her] right to appeal the [permanency planning] order" in a timely fashion. N.C. Gen. Stat. § 7B-1001(a)(5)(a). But the GAL and DHHS submit that, because the initial permanency planning orders set reunification with Quincy's and Mary's fathers—although not with Mother—as secondary plans for those children, Mother has no right of appeal because the orders for those children did not "eliminat[e] reunification, as defined by G.S. 7B-101(18c), as a permanent plan." N.C. Gen. Stat. § 7B-1001(a)(5). We are not persuaded by this suggested reading of the relevant statutes.

North Carolina General Statute Section 7B-101(18c) defines "[r]eturn home or reunification" as the "[p]lacement of the juvenile in the home of either parent or

placement of the juvenile in the home of a guardian or custodian from whose home the child was removed by court order." N.C. Gen. Stat. § 7B-101(18c) (2023). We note that North Carolina General Statute Section 7B-1001(a)(5) incorporates the definition of "reunification" in Section 7B-1001(a)(5) and identifies the parties who have a right of direct appeal to this Court from a permanency planning order eliminating reunification as either "[a] parent" or "a guardian or custodian with whom reunification is not a permanent plan." N.C. Gen. Stat. § 7B-1001(a)(5)(a), (b). Moreover, while the placement of the clause "from whose home the child was removed by court order" suggests it explicitly applies to "a guardian or custodian," we are unconvinced by the implication underlying appellees' argument, to wit, that a *parent* "from whose home the child was removed by court order," N.C. Gen. Stat. § 7B-101(18c), lacks a similar right of direct appeal from an order eliminating reunification with that parent from a child's permanent plans.[2] That reading would require us to presume that the General Assembly intended to provide a *greater right of appeal* to a guardian or custodian of a child from whose home the child was removed than to a similarly situated parent.

Such a result appears unreasonable and indeed to verge on the absurd. *See In re J.N.S.*, 207 N.C. App. 670, 677, 704 S.E.2d 511, 516 (2010) ("In construing

---

[2] This case does not require this Court to resolve whether a parent who did *not* have physical custody of a child when that child was removed from the home of the other parent or from the home of another guardian or custodian would have a right of direct appeal under the applicable statutes, and accordingly, we do not reach that question.

statutes[,] courts normally adopt an interpretation which will avoid absurd or bizarre consequences, the presumption being that the legislature acted in accordance with reason and common sense and did not intend untoward results." (citation and quotation marks omitted)).  As emphasized by our Supreme Court, "[t]he Juvenile Code strikes a balance *between the constitutional rights of a parent and the best interests of a child*[.]" *In re R.R.N.*, 368 N.C. 167, 169, 775 S.E.2d 656, 659 (2015) (emphasis added) (citing N.C. Gen. Stat. § 7B-100(3) (stating that one purpose of the Code is "[t]o provide for services for the protection of juveniles by means that respect both the right to family autonomy and the juveniles' needs for safety, continuity, and permanence")).  To bar Mother's timely appeal from an order eliminating her reunification with the children removed from her home as a permanent plan—where a guardian's or custodian's appeal would be permitted in an identical circumstance— simply because reunification with the children's fathers in separate households remained as concurrent permanent plans appears to us counter to such a balance.

Our holding here is further supported by North Carolina General Statute Section 7B-1002, which provides that, among the "[p]roper parties for appeal" "from an order permitted under G.S. 7B-1001," is "[a] parent . . . who is a nonprevailing party." N.C. Gen. Stat. § 7B-1002(4) (2023).  A foundational concept in our appellate jurisprudence is that the right to appeal belongs to a nonprevailing or "aggrieved" party.  *See In re Halifax Paper Co.*, 259 N.C. 589, 595, 131 S.E.2d 441, 446 (1963) (defining a "person aggrieved" as a party "adversely affected in respect of legal rights,

or suffering from an infringement or denial of legal rights" (citation and quotation

marks omitted)). In the context of the Juvenile Code, this Court has indicated that a

parent is an aggrieved party if his or her rights have been "directly and injuriously

affected" by a district court's action. *In re C.A.D.*, 247 N.C. App. 552, 563, 786 S.E.2d

745, 752 (2016) (citation omitted). By eliminating reunification with her as a

permanent plan for Quincy and Mary, the orders here have a direct and injurious

effect on Mother.

In sum, we hold that Mother's appeal of the permanency planning order as to

Quincy and Mary is properly before this Court.

## C. Required Written Findings

Mother's substantive contention is that the permanency planning orders for

Quincy, Mary, and Keith must be reversed because each lacks findings required

under the Juvenile Code. Specifically, she notes that the orders concerning Quincy

and Mary lack written findings mandated in subsections (b) and (d) of North Carolina

General Statute Section 7B-906.2, while the order concerning Keith lacks a written

finding under subsection (d). These arguments have merit, although as discussed

herein, remand for the necessary findings, rather than reversal of the orders is the

appropriate remedy.

As noted above, the district court was required to "adopt concurrent permanent

plans," with "[r]eunification . . . a primary or secondary plan unless . . . the court

[made] written findings that reunification efforts clearly would be unsuccessful or

would be inconsistent with the juvenile's health or safety." N.C. Gen. Stat. § 7B-906.2(b). "In determining that efforts would be unsuccessful or contrary to the juvenile's well-being, the court must make written findings 'demonstrat[ing] lack of success' as to each" of four matters provided in subsection 7B-906.2(d). *In re J.M.*, 271 N.C. App. 186, 198, 843 S.E.2d 668, 676 (2020) (quoting N.C. Gen. Stat. § 7B-906.2(b)). Those matters are:

> (1) Whether the parent is making adequate progress within a reasonable period of time under the plan.
>
> (2) Whether the parent is actively participating in or cooperating with the plan, the department, and the guardian ad litem for the juvenile.
>
> (3) Whether the parent remains available to the court, the department, and the guardian ad litem for the juvenile.
>
> (4) Whether the parent is acting in a manner inconsistent with the health or safety of the juvenile.

N.C. Gen. Stat. § 7B-906.2(d). As explained above, reunification with Mother was not a concurrent plan for any of the three juveniles, and accordingly, written findings on these four matters were required. *See id.*

In the permanency planning orders concerning Quincy and Mary, the district court made no written findings that "reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety," N.C. Gen. Stat. § 7B-906.2(b), and no written findings regarding Mother's availability to the court, DHHS, and the GAL or "[w]hether [she] is acting in a manner inconsistent with

- 11 -

the health or safety of" Quincy and Mary, N.C. Gen. Stat. § 7B-906.2(d)(3), (4). These omissions are indistinguishable from those presented in the order reviewed by this Court in *In re J.M.*, where the district court also made no written finding pursuant to North Carolina General Statute Section 7B-906.2(b) and made written findings on only two of the four matters set forth in North Carolina General Statute Section 7B-906.2(d). *See In re J.M.*, 271 N.C. App. at 198, 843 S.E.2d at 676. Accordingly, "[b]ecause 'the [district] court failed to make the requisite findings required to cease reunification efforts' under Section 7B-906.2(d), we vacate the [district] court's order[s as to Quincy and Mary] and remand for it to make those findings." *Id.* (quoting *In re D.A.*, 258 N.C. App. 247, 254, 811 S.E.2d 729, 734 (2018)).

The permanency planning order concerning Keith differs from those concerning his half-siblings. The district court therein *did* make a written finding "that reunification at this time would be inconsistent with the minor child's health and safety and need for a safe, permanent home within a reasonable period of time." *See* N.C. Gen. Stat. § 7B-906.2(b). However, it made no written finding of fact regarding Mother's availability "to the court, the department, and the guardian ad litem for the juvenile[.]" N.C. Gen. Stat. § 7B-906.2(d)(3).

Our Supreme Court has recently considered a case presenting a similar circumstance, explicitly distinguishing it from *In re D.A.* and *In re J.M. See In re L.R.L.B.*, 377 N.C. 311, 324-45, 857 S.E.2d 105, 117 (2021). In that appeal from a termination of parental rights order, our Supreme Court noted that a previous

"permanency planning order [did] not include sufficient written findings as to [the

mother's availability under North Carolina General Statute Section 7B-906.2(d)(3)]—

but [did] include findings on the ultimate issue—which must be addressed as a

preface to the elimination of reunification from the permanent plan[.]" *Id.* at 325,

857 S.E.2d at 117. Specifically, our Supreme Court opined:

> Unlike the specific finding that "reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety" which is required by N.C.G.S. § 7B-906.2(b) before eliminating reunification from the permanent plan, no particular finding under N.C.G.S. § 7B-906.2(d)(3) is required to support the [district] court's decision. N.C.G.S. § 7B-906.2(d) merely requires the [district] court to make "written findings as to each of the" issues enumerated in N.C.G.S. § 7B-906.2(d)(1)-(4), and to consider whether the issues "demonstrate the [parent's] degree of success or failure toward reunification[.]" N.C.G.S. § 7B-906.2(d). A finding that the parent has remained available to the [district] court and other parties under N.C.G.S. § 7B-906.2(d)(3) does not preclude the [district] court from eliminating reunification from the permanent plan based on the other factors in N.C.G.S. § 7B-906.2(d).

*Id.* at 325-26, 857 S.E.2d at 117-18.

Although this appeal arises from a permanency planning order and Keith's

case has not progressed to a termination of parental rights, we see no reason to depart

from the reasoning in *In re L.R.L.B.* or its guidance that "the appropriate remedy for

the [district] court's error . . . is to remand this matter to the [district] court for the

entry of additional findings in contemplation of N.C.G.S. § 7B-906.2(d)(3)." *Id.* at 326,

857 S.E.2d at 118 (citations omitted). Further, upon remand,

[i]f the [district] court's additional findings under . . . § 7B-906.2(d)(3) do not alter its finding under . . . § 7B-906.2(b) that further reunification efforts 'are clearly futile or inconsistent with the juvenile's need for a safe, permanent home within a reasonable period of time[,]' then the [district] court may simply amend its permanency planning order to include the additional findings[.]

*Id.* at 327, 857 S.E.2d at 118.

### III.    Conclusion

The initial permanency planning orders regarding Quincy and Mary are vacated and remanded for the entry of findings pursuant to North Carolina General Statute Sections 7B-906.2(b) and 7B-906.2(d)(3) and (4).  On remand, the district court should also reconcile the contradictory findings in Mary's order as noted above so the resulting order will clearly identify the appropriate primary and secondary plans as required by North Carolina General Statute Section 7B-906.2(b).  The initial permanency planning order regarding Keith is remanded for entry of a finding pursuant to North Carolina General Statute Section 7B-906.2(d)(3).

18 JA 334 AND 20 JA 94: VACATED AND REMANDED.

18 JA 333: REMANDED.

Judges FLOOD and STADING concur.